# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| K.J., | : | Hon. Joseph H. Rodriguez |
| | : | |
| *Plaintiff,* | : | 1:20-cv-14177 |
| | : | |
| v. | : | Opinion |
| | : | |
| J.P.D., K.M., GALLOWAY TOWNSHIP | : | |
| POLICE, TOWNSHIP OF GALLOWAY, | : | |
| JOHN DOES 1-10, ABC CORPORATIONS, | : | |
| | : | |
| | : | |
| *Defendants.* | : | |

Presently before the Court is a motion to dismiss the Amended Complaint filed by Defendant Township of Galloway ("Galloway").[1] [Dkt. 44].  For the reasons set forth below, the Court will grant Galloway's motion in part and deny the motion in part.

## I.   INTRODUCTION

Plaintiff is a thirty-eight-year-old man who currently resides in Mays Landing, New Jersey.  [Am. Compl. ¶ 1].  In 1995, when Plaintiff was approximately eleven years old and while his parents were going through a divorce, Plaintiff came to know Defendant J.P.D., a Galloway Township Police Officer who J.P.D. responded to multiple domestic violence calls at Plaintiff's home.  [Am. Compl. ¶¶ 13–15].  J.P.D. eventually gave Plaintiff his pager number so that Plaintiff could notify J.P.D. before Plaintiff's

---

[1] This lawsuit names Township of Galloway and Galloway Township Police as defendants.  As Galloway points out, police departments are generally "instruments of municipalities," and cannot be sued as legal entities separate from the local government or municipality.  *See Gonzalez v. Cape May Cnty.*, No. CIV.A. 12-0517, 2015 WL 1471814, at *4 (D.N.J. Mar. 31, 2015) (citations and quotations omitted).  Thus, Township of Galloway is the proper defendant for claims asserted against the Galloway Police Department.

father visited Plaintiff's house.  [Am. Compl. ¶¶ 16, 18].  J.P.D. developed a rapport with Plaintiff and his family over several months, brought snacks to Plaintiff's house and brought Plaintiff and his brother to a professional basketball game.  [Am. Compl. ¶¶ 23–25].

When Plaintiff's parents finalized their divorce, Plaintiff's mother lost the family home and moved in with a relative.  [Am. Compl. ¶ 27].  J.P.D. "offered to allow Plaintiff and his younger brother to live with him."  [Am. Compl. ¶ 28].  J.P.D. "utilized his status as a Galloway Police Officer to convince Plaintiff's mother to allow Plaintiff and his brother to stay with Defendant J.P.D."  [Am. Compl. ¶ 30].  As a result, Plaintiff and his brother moved to J.P.D.'s home in November or December of 1995.  [Am. Compl. ¶ 31]. According to the Amended Complaint, another Galloway Township police officer, K.M., who was a friend of J.P.D., was aware of this living arrangement because J.P.D. spoke with K.M. by phone about the living arrangement and J.P.D.'s activities with Plaintiff and his brother.  [Am. Compl. ¶¶ 33–36].  K.M. "failed to report this to any local police unit or supervisor."  [Am. Compl. ¶ 33].  J.P.D. and K.M. also did not report this living arrangement to the Division of Child Placement and Permanency.  [Am. Compl. ¶¶ 34, 37].  The Amended Complaint alleges "on information and belief" that "other employees, supervisors, agents, and officers" of the Galloway Township Police knew that Plaintiff was living with J.P.D.  [Am. Compl. ¶ 40].

After Plaintiff and his brother moved in with J.P.D., J.P.D. began sexually abusing Plaintiff.  [Am. Compl. ¶ 42].  The abuse began when J.P.D. groped Plaintiff while Plaintiff and his brother were play wrestling with J.P.D.  [Am. Compl. ¶¶ 43–44]. Later that night, J.P.D. asked Plaintiff to go to J.P.D.'s bedroom, where J.P.D. took out his police-issued handgun, "gave Plaintiff a lengthy instruction on how the gun

operates," placed the gun on his nightstand, and instructed Plaintiff to go onto J.P.D.'s bed. [Am. Compl. ¶¶ 45–47]. J.P.D. then removed Plaintiff's pants and "forcibly masturbated Plaintiff." [Am. Compl. ¶ 50]. Plaintiff feared that J.P.D. "would overtly threaten him" with the gun if Plaintiff refused. [Am. Compl. ¶ 50]. J.P.D. told Plaintiff that this would be "their secret" and that nobody needed to know. [Am. Compl. ¶ 51]. When Plaintiff told J.P.D. that he intended to tell his mother, J.P.D. said that he had already told her and said "I have a gun and a badge. Who are you going to call on me?" [Am. Compl. ¶ 53]. Out of fear, Plaintiff did not tell. From there, J.P.D. continued to sexually abuse Plaintiff by performing oral sex on Plaintiff, forcing Plaintiff to perform oral sex on J.P.D., and sodomizing Plaintiff. [Am. Compl. ¶¶ 59, 62–64]. "[M]ost all of the sexual abuse occurred in Defendant J.P.D.'s bedroom," [Am. Compl. ¶ 57], and J.P.D. "always kept his police issued handgun on top of or inside of the bedside nightstand." [Am. Compl. ¶ 58]. J.P.D. sometimes began the abuse by instructing Plaintiff to load bullets into the magazine of J.P.D.'s gun and, on one occasion, J.P.D. loaded a round into the chamber. [Am. Compl. ¶ 59]. The abuse continued until the summer of 1996. [Am. Compl. ¶ 65]. Plaintiff avoided further abuse until 1999, when he was sent on one occasion to J.P.D.'s house, where J.P.D. abused Plaintiff. [Am. Compl. ¶ 67]. Plaintiff has suffered severe emotional distress because of this abuse. [Am. Compl. ¶ 68].

In October of 2020, Plaintiff commenced this lawsuit against J.P.D., K.M., and Galloway. [Dkt. 1]. After Galloway filed a motion to dismiss, [Dkt. 12], Plaintiff filed an amended complaint (the "Amended Complaint"), which is the operative pleading. Plaintiff's Amended Complaint alleges the following claims against the following defendants: violation of Plaintiff's constitutional rights against J.P.D. under 42 U.S.C. §

1983 (Count I); failure to train and supervise in violation of § 1983 against Galloway
(Count II); violation of New Jersey's Child Sexual Abuse Act, N.J. Stat. Ann. § 2A:61B-1
against J.P.D. (Count III); violation of the New Jersey Law Against Discrimination
("NJLAD"), N.J. Stat. Ann. § 10:5-12, against all Defendants (Count IV); assault and
battery against J.P.D. (Count V); false imprisonment against J.P.D. (Count VI);
intentional infliction of emotional distress against J.P.D. (Count VII); negligent
supervision against Galloway (Count VIII); negligence against all Defendants (Count
IX); gross negligence against all Defendants (Count X); civil conspiracy against J.P.D.
and K.M. (Count XI); vicarious liability against Galloway (Count XII); Count XII
(fictitious parties).  Galloway filed the present motion to dismiss.  [Dkt. 44].

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a
claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint should be
dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a
claim.  *Id.*  In general, only the allegations in the complaint, matters of public record,
orders, and exhibits attached to the complaint, are taken into consideration when
deciding a motion to dismiss under Rule 12(b)(6).  *See Chester Cnty Intermediate Unit
v. Pa. Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990).  It is not necessary for the plaintiff
to plead evidence.  *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977).  The
question before the Court is not whether the plaintiff will ultimately prevail.  *Watson v.
Abington Twp.*, 478 F.3d 144, 150 (3d. Cir. 2007).  Instead, the Court simply asks
whether the plaintiff has articulated "enough facts to state a claim to relief that is
plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[2] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." *Wyeth v. Ranbaxy Labs., Ltd.*, 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." (quoting *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005))). *Accord Iqbal*, 556 U.S. at 678–80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). *See also Iqbal*, 556 U.S. at 678

---

[2] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2))

## III.   ANALYSIS

### a. *Monell* Claim Against Galloway (Count II)

Galloway first moves to dismiss the *Monell* liability claim under § 1983 alleged at Count II.  Under 42 U.S.C. § 1983

> [e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of a State or Territory ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

Section 1983 does not create substantive rights but provides a remedy for violations of a plaintiff's constitutional rights.  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985).  "To state a claim under § 1983, a plaintiff must allege that a person acting under color of state law caused a deprivation of a right secured by the Constitution." *Parker v. Sch. Dist. of Philadelphia*, 346 F. Supp. 3d 738, 745 (E.D. Pa. 2018) (citing *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)).

In *Monell v. Department of Social Services of New York*, the Supreme Court determined that municipalities are "persons" under § 1983, but that municipalities cannot be held liable under *respondeat superior* for their employees' misconduct.  436 U.S. 658, 693 (1978); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818 (1985).  "Rather, a municipal entity may be liable under § 1983 only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy' deprives a citizen of constitutional rights." *Parker v. Sch. Dist. of Philadelphia*, 346 F. Supp. 3d 738, 745 (E.D. Pa. 2018) (quoting *Monell*, 436 U.S. at 694).

Galloway moves to dismiss Plaintiff's *Monell* claim on two grounds.  First, Galloway contends that the Amended Complaint does not allege that J.P.D. or K.M. acted under "color of law" when J.P.D. abused Plaintiff.  [Dkt. 44-1 at 13–15].  Second, Galloway argues that the Amended Complaint does not plausibly allege a "custom, pattern, or practice" of sexual misconduct.  [Dkt. 44-1 at 15–16].[2]  Assuming without deciding that Plaintiff adequately pleads action under color of law, the Amended Complaint does not plausibly plead a custom or practice.

"[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject

---

[2] In its reply, Galloway argues for the first time that Plaintiff's § 1983 claims are time barred. [Dkt. 53 at 6–7].  The Court declines to consider this argument because it is improperly raised for the first time in reply.  *See D'Alessandro v. Bugler Tobacco Co.*, No. CIV A 05-5051 JBS, 2007 WL 130798, at *2 (D.N.J. Jan. 12, 2007) ("A moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief. (citing *Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.*, 978 F.2d 1318, 1327 n.11 (3d Cir. 1992))).

matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).  As the

Third Circuit has observed,

> [t]here are three situations where acts of a government
> employee may be deemed to be the result of a policy or
> custom of the governmental entity for whom the employee
> works, thereby rendering the entity liable under § 1983. The
> first is where the appropriate officer or entity promulgates a
> generally applicable statement of policy and the subsequent
> act complained of is simply an implementation of that policy.
> The second occurs where no rule has been announced as
> policy but federal law has been violated by an act of the
> policymaker itself.  Finally, a policy or custom may also exist
> where the policymaker has failed to act affirmatively at all,
> [though] the need to take some action to control the agents
> of the government is so obvious, and the inadequacy of
> existing practice so likely to result in the violation of
> constitutional rights, that the policymaker can reasonably be
> said to have been deliberately indifferent to the need.

*Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (alterations in

original) (citations and quotations omitted).

"Where the policy 'concerns a failure to train or supervise municipal employees,

liability under section 1983 requires a showing that the failure amounts to deliberate

indifference to the rights of persons with whom those employees will come into

contact.'" *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting

*Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)).  "'[D]eliberate indifference' is

a stringent standard of fault, requiring proof that a municipal actor disregarded a known

or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v.

Brown*, 520 U.S. 397, 410 (1997).  "Thus, when city policymakers are on actual or

constructive notice that a particular omission in their training program causes city

employees to violate citizens' constitutional rights, the city may be deemed deliberately

indifferent if the policymakers choose to retain that program." *Connick v. Thompson*,

563 U.S. 51, 61 (2011). "To succeed on this theory of liability, plaintiffs must show both 'contemporaneous knowledge' of the allegedly offending incident or 'knowledge of a prior pattern of similar incidents and circumstances under which a supervisor's inaction could be found to have communicated a message of approval.'" *Hansell v. City of Atl. City*, 152 F. Supp. 2d 589, 610 (D.N.J. 2001), *aff'd*, 46 F. App'x 665 (3d Cir. 2002) (quoting *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998)).

Galloway raises several arguments, including that the Amended Complaint does not allege that a "policymaker" knew of J.P.D.'s conduct or a pattern of similar conduct. [Dkt. 44-1 at 20]. Plaintiff responds that Galloway had a "custom or policy" of taking custody of "endangered children" pursuant to authority granted to police officers statewide under two state statutes.[3] [Dkt. 50 at 13]. Plaintiff argues that Galloway failed to train officers concerning their authority to take custody of endangered children. [*Id.*]. But Plaintiff also concedes that he does not know whether Galloway knew of the lawful authority of its officers to take custody of endangered children, and he "assumes" that Galloway was ignorant of this authority and therefore failed to train its officers on how to exercise this authority. [Dkt. 50 at 14].

The Court agrees with Galloway. The Amended Complaint only alleges that two individuals affiliated with Galloway were aware of J.P.D.'s conduct, namely, J.P.D. and K.M. But to establish the deliberate indifference element of a failure-to-train *Monell* claim, a "policymaker" must have actual or constructive knowledge that a failure to train causes constitutional violations. *Connick*, 563 U.S. at 61. "Under New Jersey law, the

---

[3] Plaintiff refers to N.J. Stat. Ann. §§ 9:6-8.27 and 9:6-8.29, both of which state that police officers may remove endangered children from the custody of their guardians, with and without consent, respectively.

Chief of Police is the relevant policymaker for a municipal police department."

*Zampetis v. City of Atl. City*, No. CV 15-1231 (NLH), 2016 WL 5417195, at *2 (D.N.J. Sept. 28, 2016) (citing *Hernandez v. Bor. Of Palisades Park Police Dep't*, 58 Fed. App'x. 909, 913 (3d Cir. 2003) and N.J. Stat. Ann. § 40A:14-118). Plaintiff does not plead facts suggesting that Galloway's chief of police had "contemporaneous knowledge" of J.P.D.'s conduct" or "knowledge of a prior pattern of similar incidents."[4] *Hansell*, 152 F. Supp. 2d at 610 (citations and quotations omitted). Thus, the Amended Complaint does not adequately plead deliberate indifference. The Court will therefore grant Galloway's motion to dismiss Count II.

### b. NJLAD (Count IV)

Count IV of the Amended Complaint alleges that Galloway is liable under the NJLAD for engaging in "sex/gender discrimination in [the] provision of a public accommodation." The NJLAD provides, in part:

> [i]t shall be ... unlawful discrimination ... [f]or any ... agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof ... on account of the ... sex ... of such person....

N.J. Stat. Ann. 10:5-12(f)(1). "To state a claim under the public accommodation theory of the NJLAD, a plaintiff must allege, '(1) defendant operates a place of public

---

[4] Plaintiff argues that the Amended Complaint "charges [Galloway] with deliberate indifference to the risk created when police officers attempt to intervene on behalf of endangered children without proper training as to their statutory authority." [Dkt. 15 at 14]. But even if Plaintiff alleged facts suggesting that a policymaker should have known of J.P.D.'s conduct—which he does not—"an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as [unconstitutional deliberate indifference]." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Zampetis*, 2016 WL 5417195, at *6.

accommodation, (2) the plaintiff is a member of a protected class, and (3) he or she was denied equal treatment on the basis of his or her membership in a protected class.'" *Greene v. Lance*, No. CV2114399MASLHG, 2022 WL 1241309, at *4 (D.N.J. Apr. 27, 2022) (quoting *Vergara v. Keyes*, No. 20-1460, 2020 WL 7778080, at *4 (D.N.J. Dec. 30, 2020)).  The Superior Court of New Jersey, Appellate Division has held that a "police department—both the building and the individual officers—is a place of public accommodation."  *Ptaszynski v. Uwaneme*, 853 A.2d 288, 297 (N.J. Super. Ct. App. Div. 2004); *see also Sandy v. Twp. of Orange*, No. A-0034-19, 2021 WL 3197029, at *11–12 (N.J. Super. Ct. App. Div. July 29, 2021) (citing *Ptaszynski* approvingly and applying its holding).

"Under the NJLAD, 'vicarious liability exists when an employer knew, or should have known, about the harassing conduct and failed to take remedial action.'"  *Dillard v. Morris Cnty. Prosecutor's Off.*, No. CV 19-19089, 2020 WL 4932527, at *7 (D.N.J. Aug. 24, 2020) (quoting *Deresky v. B.J. McGlone & Co.*, No. 14-1930, 2018 WL 3425731, at *7 (D.N.J. July 16, 2018)).

Galloway argues that Plaintiff's NJLAD claim should be dismissed on two grounds.  First, Galloway argues that the *Ptaszynski* court's holding that individual police officers are places of public accommodation does not extend to an officer's off-duty and personal conduct.  [Dkt. 44-1 at 21].  Second, Galloway contends that Plaintiff cannot sustain a vicarious liability claim against Galloway because the Amended

Complaint does not plausibly allege that J.P.D.'s employer knew or should have known of J.P.D.'s conduct.  [Dkt. 44-1 at 22–23].[5]

With respect to Galloway's first argument, Plaintiff responds that J.P.D. "groomed, isolated and took unlawful custody of Plaintiff while acting as a uniformed, on-duty Galloway Township police officer."  [Dkt. 50 at 16].  Plaintiff responds to Galloway's second argument by conceding that "Plaintiff lacks the knowledge requisite to fairly allege" that anyone other than J.P.D. and K.M. knew of J.P.D.'s conduct.  [Dkt. 50 at 17].  Nevertheless, Plaintiff contends that Galloway "assuredly should have known" of J.P.D.'s conduct because they "should have trained" officers about taking custody of children pursuant to their statutory authority as discussed above.  [Dkt. 50 at 17].  Plaintiff also argues that J.P.D., "a single man with no children of his own," must have mentioned that J.P.D. took custody of Plaintiff and his brother to other police officers. [Dkt. 50 at 17–18].

Assuming without deciding that *Ptaszynski* extends to J.P.D.'s conduct, the Court agrees that the Amended Complaint does not plausibly allege Galloway's actual or constructive knowledge necessary to state a vicarious liability claim under the NJLAD. *See Dillard*, 2020 WL 4932527, at *7.  As Galloway points out, the Amended Complaint "does not plead any facts to plausibly infer that the Galloway Defendants knew about the alleged sexual assaults by J.P.D."  [Dkt. 44-1 at 22].  Rather, the Amended Complaint alleges that J.P.D. and K.M. never "reported to [Galloway], or any other lawful authority, the fact that Plaintiff resided with Defendant J.P.D.," and that J.P.D. and

---

[5] In its reply, Galloway argues for the first time that Plaintiff's NJLAD claims are time barred. [Dkt. 53 at 13].  The Court declines to consider this argument because it is improperly raised for the first time on reply.  *See D'Alessandro*, 2007 WL 130798, at *2.

K.M. conspired to keep this arrangement a secret.  [Am. Compl. ¶¶ 108–110].  Even if the Amended Complaint plausibly alleged that Galloway knew that Plaintiff resided with J.P.D., that does not, without more, permit an inference that Galloway knew that J.P.D. was sexually abusing Plaintiff.  Because Plaintiff fails to plead facts suggesting that Galloway knew or should have known of J.P.D.'s sexual abuse, Plaintiff fails to state an NJLAD claim against Galloway as J.P.D.'s employer.  The Court will therefore grant Galloway's motion to dismiss Count IV.

### c.  Common-Law Claims

The Amended Complaint alleges that Galloway is directly liable for negligent supervision (Count VIII), negligence (Count XI), and gross negligence (Count X).  It also alleges at Count XII that Galloway is vicariously liable for these torts, as well as J.P.D.'s assault and battery alleged at Count V, J.P.D.'s false imprisonment alleged at Count VI, J.P.D.'s intentional infliction of emotional distress alleged at Count VII, and J.P.D.'s civil conspiracy with K.M. alleged at Count XI.  Galloway moves to dismiss these claims on several grounds.  [*See* Dkt. 44-1 at 22].  To explain and evaluate these arguments, the Court must first provide some background concerning the New Jersey Tort Claims Act ("TCA"), N.J. Stat. Ann. § 59:1–1, et seq., and 2019 legislation that Amended the TCA.

### i.  Tort Claims Act, Agency Law

The TCA "enables injured persons to sue New Jersey governmental entities for damages under limited circumstances." *Gaglioti v. Cummings*, 55 F. Supp. 2d 346, 349 (E.D. Pa. 1999).  "The purpose of the Act is to 'reestablish the immunity of public entities while coherently ameliorating the harsh results of the [sovereign immunity] doctrine.'" *Tripo v. Robert Wood Johnson Med. Ctr.*, 845 F. Supp. 2d 621, 626 (D.N.J. 2012) (quoting *Beauchamp v. Amedio*, 751 A.2d 1047 (N.J. 2000)).

The TCA states that "[e]xcept as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." N.J. Stat. Ann. § 59:2-1(a). Where the TCA permits suit against a public entity, the "entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J. Stat. Ann. § 59:2-2. "[T]his provision qualifies the general declaration of immunity in Section 2–1(a)." *Turner v. Twp. of Irvington*, 63 A.3d 1233, 1239 (N.J. Super. Ct. App. Div. 2013). The TCA also provides that a "public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J. Stat. Ann. § 59:2-10.

These TCA provisions largely codify common law agency principles that determine the extent to which private employers can be held liable for the conduct of their employees. For example, § 59:2-2 of the TCA "relies upon the established principles of law such as the doctrine of *respondeat superior*" to state that public entities may be liable for the misconduct of their employees. *Wright v. State*, 778 A.2d 443, 450–51 (N.J. 2001). The common-law doctrine of *respondeat superior* generally holds that an employer may be liable "torts of one of its employees only when the latter was acting within the scope of his or her employment." *Di Cosala v. Kay*, 450 A.2d 508, 513 (N.J. 1982) (citing *Gilborges v. Wallace*, 396 A.2d 338 (N.J. 1978); *accord Singer v. Beach Trading Co.*, 876 A.2d 885, 893 (N.J. Super Ct. App. Div. 2005). "[P]roof that the employer-employee relationship exists does not, in and of itself, create an inference that a given act done by the employee was within the scope of employment." *Carter v. Reynolds*, 175 N.J. 402, 410, 815 A.2d 460, 465 (N.J. 2003) (citing Restatement

14

(Second) of Agency § 228 cmt. b).   Thus, like the common law, § 59:2-2 of the TCA permits liability against a public entity for harms caused by a public employee acting "within the scope of his employment."   Comment N.J. Stat. Ann. § 59:2-2(a); *Wright*, 778 A.2d at 450–51.

Section 59:2-10 of the TCA also borrows from common law.   The common law holds that an employer can be held liable for the intentional torts or crimes of its employees if committed while acting within the scope of their employment.   *See Davis v. Devereux Found.*, 37 A.3d 469, 490 (N.J. 2012) ("[A]n act may be within the scope of employment although consciously criminal or tortious." (quoting Restatement (Second) of Agency § 231)).   For such conduct to be within an employee's scope of employment, the conduct "however aggressive and misguided—[must have] originated in his or effort to fulfill an assigned task" or to "enforce [his  or her] employer's rules."[6]   *Davis*, 37 A.3d at 490, 491.   But the common law also created an exception to this rule, holding that public employers cannot be held vicariously liable for the intentional torts or crimes of their employees regardless of whether they occur within the scope of employment.   *See Habayeb v. Butler*, No. 15-5107, 2016 WL 1242763, at *6 (D.N.J. Mar. 29, 2016) (quoting *O'Connor v. Harms, et al.*, 266 A.2d 605 (N.J. Super. Ct. App. Div. 1970)). Section 59:2-10 thus adopted this common-law exception to liability an employee's intentional crimes and torts.   *See* N.J. Stat. Ann. § 59:2-10 ("A public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual

---

[6] "The foreseeability of the employee's act is a crucial inquiry."  *Davis*, 37 A.3d at 489 (citations omitted).  "The master can reasonably anticipate that servants may commit minor crimes in the prosecution of the business, but serious crimes are not only unexpectable but in general are in nature different from what servants in a lawful occupation are expected to do."  *Davis*, 37 A.3d at 490 (quoting Restatement (Second) of Agency § 231 cmt. a).

malice, or willful misconduct."); *see also* cmt. to § 59:2-10 ("This provision recognizes the existing law and public policy that a public entity should not be vicariously liable for such conduct of its employees." (citing *O'Connor*, 266 A.2d at 607)).

### ii. The 2019 Amendment

In 2019, "the [New Jersey] Legislature expanded public-entity civil liability for claims based on sexual assaults and other sexual misconduct by enacting [N.J. Stat. Ann. §] 59:2-1.3(a), which disables in those instances the immunities provided by the [TCA]." *E.C. by D.C. v. Inglima-Donaldson*, 268 A.3d 1029, 1031 (N.J. Super. Ct. App. Div. 2021). Section 59:2-1.3(a) provides:

> Notwithstanding any provision of the "New Jersey Tort Claims Act," N.J.S.59:1-1 et seq., to the contrary:
>
> > (1) immunity from civil liability granted by that act to a public entity or public employee shall not apply to an action at law for damages as a result of a sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined in section 2 of P.L.1992, c. 7 (C.2A:30B-2), or sexual abuse as defined in section 1 of P.L.1992, c. 109 (C.2A:61B-1) being committed against a person, which was caused by a willful, wanton or grossly negligent act of the public entity or public employee; and
> >
> > (2) immunity from civil liability granted by that act to a public entity shall not apply to an action at law for damages as a result of a sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined in section 2 of P.L.1992, c. 7 (C.2A:30B-2), or sexual abuse as defined in section 1 of P.L.1992, c. 109 (C.2A:61B-1) being committed against a minor under the age of 18, which was caused by the negligent hiring, supervision or retention of any public employee.

N.J. Stat. Ann. § 59:2-1.3(a). The Court will refer to this provision generally as the "2019 Amendment."

The 2019 Amendment does not create a new cause of action or theory of liability. Instead, it "deprive[s] public entities of their Tort Claims Act immunities when the sexual misconduct suffered by the plaintiff was caused by a willful, wanton or grossly negligent act of the public entity or public employee." *E.C. by D.C. v. Inglima-Donaldson*, 268 A.3d 1029, 1038 (N.J. Super Ct. App. Div. 2021). The Legislature passed the 2019 Amendment so that "a public entity, as defined in the [TCA], may be held liable [in sexual abuse suits] in the same manner as a private organization." S. Judiciary Comm. Statement to S. No. 477 (March 7, 2019), *available at* https://www.njleg.state.nj.us/bill-search/2018/S477/bill-text?f=S0500&n=477_S1.

### iii.  Plaintiff's Claims

Plaintiff alleges that Galloway is directly liable for negligent supervision (Count VIII), negligence (Count XI), and gross negligence (Count X). It also alleges at Count XII that Galloway is vicariously liable for these torts, as well as J.P.D.'s assault and battery alleged at Count V, J.P.D.'s false imprisonment alleged at Count VI, J.P.D.'s intentional infliction of emotional distress alleged at Count VII, and J.P.D.'s civil conspiracy with K.M. alleged at Count XI. Plaintiff contends that the TCA does not immunize Galloway from Plaintiff's direct and vicarious tort claims against Galloway because they arise from J.P.D.'s sexual abuse of Plaintiff and, therefore, fall under the 2019 Amendment. [Dkt. 50 at 21].

Galloway disagrees. With respect to vicarious liability claims, Galloway argues that, in amending the TCA to permit lawsuits against public actors and entities for sexual assault and/or abuse, § 59:2-1.3(a)(1) did not amend N.J. Stat. Ann. § 59:2-2, which permits liability against a government entity for an employee's misconduct when

the employee acted "within the scope of his employment."[7]  [Dkt. 44-1 at 25–26].

Galloway argues that J.P.D. did not act within the scope of his employment when he

abused Plaintiff and, therefore, that Galloway cannot be held vicariously liable for

J.P.D.'s abuse.[8]  [Dkt. 44-1 at 25–26].  Second, Galloway argues that § 59:2-1.3(a)(1)

only abrogates immunity for a public entity or employee's "willful, wanton, or grossly

negligent" conduct, and does not "negate public entity immunities" for an employee's

criminal acts as provided by N.J. Stat. Ann. § 59:2-10.[9]  With respect to direct liability,

Galloway argues that the Amended Complaint "does not plead any facts to establish the

elements required for Negligent Supervision in order to find Defendants liable under

[N.J. Stat. Ann. §] 59:2-1.3(2).  [Dkt. 44-1 at 30–31].

### 1.  Vicarious Liability

As noted above, Galloway raises two arguments against Plaintiff's vicarious

liability claims: that J.P.D. did not act within the scope of his employment, and that §

59:2-1.3(a)(1) only abrogates immunity for a public entity or employee's "willful,

wanton, or grossly negligent" conduct.  The Court will consider Galloway's state-of-mind

---

[7] Galloway does not argue that the Amended Complaint fails to allege that J.P.D.'s conduct is "a sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined in section 2 of P.L.1992, c. 7 (C.2A:30B-2), or sexual abuse as defined in section 1 of P.L.1992, c. 109 (C.2A:61B-1)" for the purposes of § 59:2-1.3(a).

[8] Despite its extensive discussion of the 2019 Amendment in its opening brief, Galloway argues for the first time in its reply brief that the 2019 Amendment only abrogates TCA immunity prospectively, and cannot be applied here to abrogate immunity for conduct that occurred in the 1990's.  [Dkt. 53 at 13-16].  The Court declines to consider this argument because Galloway improperly raises it for the first time in its reply brief.  *See D'Alessandro*, 2007 WL 130798, at *2 (citations omitted).

[9] Again, N.J. Stat. Ann. § 59:2-10 provides that "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct."

argument first, as doing so will simplify the Court's discussion of Galloway's scope-of-employment argument.

### a. State of Mind

Mental states for tort claims run on a continuum "from (1) ordinary negligence, through (2) gross negligence, (3) willful and wanton misconduct, (4) reckless misconduct to (5) intentional misconduct." N.J. Model Civil Jury Charge 5.12. "As noted above, the TCA provides that a "public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J. Stat. Ann. § 59:2-10. Further, N.J. Stat. Ann. § 59:2-1.3(a) abrogates immunity against employers and/or employees where a sexual harm is caused by "a willful, wanton or grossly negligent act of the public entity or public employee." Galloway argues that, while § 59:2-1.3(a) "may have removed immunity for willful misconduct … it did not go so far as to remove immunity for malicious, fraudulent, or criminal conduct." [Dkt. 44-1 at 26–27]. Galloway further contends that the types of sexual misconduct identified in § 59:2-1.3(a) are all crimes that "require intentional conduct beyond" willful and wanton misconduct. [*Id.*].

Plaintiff responds that § 59:2-10 is an immunity which § 59:2-1.3(a) abrogates. [Dkt. 50 at 24]. Plaintiff also provides a letter notifying the Court of *E.C. by D.C. v. Inglima-Donaldson*, 268 A.3d 1029 (N.J. Super. Ct. App. Div. 2021), a case decided after Plaintiff submitted his opposition brief. [Dkt. 55]. Plaintiff contends that *E.C. by D.C.* resolves this issue in Plaintiff's favor. [*Id.*].

In *E.C. by D.C.*, the plaintiff sued his school district for vicarious liability based on the sexual misconduct of a teacher. 268 A.3d at 1031–32. The school district argued that, in order to be stripped of its immunity under § 59:2-1.3(a)(1), the plaintiff needed

to establish that the school committed a "willful, wanton or grossly negligent" act in addition to showing that the teacher committed sexual misconduct. *Id.* at 1033. In other words, the school district argued that, under § 59:2-1.3(a)(1), a public entity's immunity is not "disabled whenever a public employee's conduct was willful, wanton or grossly negligent." *Id.* The school district also argued that § 59:2-10 was not an "immunity" and, therefore, was unaffected by § 59:2-1.3(a)(1).

The Appellate division rejected both arguments. It found that, when a plaintiff sues a public employer for the sexual misconduct of an employee under subsection (1), the plaintiff must "show the 'willful, wanton or grossly negligent' conduct of only the public entity 'or' public employee, but not both." *E.C. by D.C.*, 268 A.3d at 1036. In such cases, the public employee's commission of an enumerated sex crime qualifies as "willful, wanton, or grossly negligent" conduct, even though those crimes might require a state of mind more culpable than willfulness, wantonness, or gross negligence. *See E.C. by D.C.*, 268 A.3d at 1034–35 (observing that "the phrase 'willful, wanton or grossly negligent' becomes unnecessary when a public employee is the sex offender," but concluding that the text and legislative intent of § 59:2-1.3(a)(1) permit such a result). The Appellate Division also concluded that § 59:2-10 was an immunity which does not "remain[] applicable" in cases where § 59:2-1.3(a)(1) applies.[10] *Id.* at 1037.

---

[10] As a result of these holdings, courts determining whether a claim is entitled § 59:2-1.3(a)(1)'s immunity waiver must ask: (1) did the plaintiff suffer an injury due to sexual assault, another crime of a sexual nature, a prohibited sexual act, or sexual abuse as defined in the statute?; if so (2) does the plaintiff allege that a public entity or employee committed the sexual misconduct? If so, the plaintiff's claim avoids TCA immunity. If not, and a non-public actor commits the sexual misconduct, then (3) does the plaintiff allege that the "willful, wanton or grossly negligent act" of a public entity or employee caused the sexual misconduct? If so, the claim avoids TCA immunity.

Following *E.C. by D.C.*, the Court agrees with Plaintiff that § 59:2-1.3(a)(1) abrogates § 59:2-10 in its entirety, even though § 59:2-10 includes mental states more culpable than those identified in § 59:2-1.3(a)(1).[11]  Because the Amended Complaint alleges that J.P.D., a Galloway employee, sexually abused Plaintiff, § 59:2-10 immunity does not defeat Plaintiff's claim.  The Court therefore rejects Galloway's motion on this issue.

### b.  N.J. Stat. Ann. §§ 59:2-1.3(a)(1), 59:2-2 and Immunity

Whether and to what extent § 59:2-1.3(a)(1) alters § 59:2-2 is an issue of first impression.  To address this issue, the Court must first turn to the Legislature's intent in enacting § 59:2-1.3(a)(1).  *See E.C. by D.C.*, 268 A.3d at 1036 (citing *Murray v. Plainfield Rescue Squad*, 46 A.3d 1262 (N.J. 2012)).  Discerning legislative intent "requires consideration of the statute's plain language, which is best understood when the words used are given 'their ordinary meaning and significance.'"  *Id.* (quoting *DiProspero v. Penn*, 874 A.2d 1039 (N.J. 2005).  Section 59:2-1.3(a)(1) states, in part, that "[n]otwithstanding any provision of the [TCA] to the contrary: **immunity** from civil liability granted by [the TCA] to a public entity or public employee shall not apply...."  N.J. Stat. Ann. § 59:2-1.3(a)(1) (emphasis added).  The Court thus begins its analysis by determining whether § 59:2-2's "scope of employment" provision confers "immunity" for the purposes of § 59:2-1.3(a)(1).

---

[11] The parties did not brief the issue of whether and to what extent removal of § 59:2-10 immunity places public employers like Galloway on equal footing with private employers, which are generally shielded from liability at common law when an employee commits "serious crimes."  *Davis*, 37 A.3d at 490 (quoting Restatement (Second) of Agency § 231 cmt. a).

"The word 'immunity' is not defined by the [TCA], and [§] 59:2-1.3(a) does not specify what provisions of the [TCA] it intended to disable." *E.C. by D.C.*, 268 A.3d at 1037. The Appellate Division has assumed that the term "immunity" means "exemption from a duty [or] liability" as opposed to a "limitation" on liability. *E.C. by D.C.*, 268 A.3d at 1037 (quoting Black's Law Dictionary 898 (11th Ed. 2019) and citing *McDonald v. City of Chicago*, 561 U.S. 742, 813-15 (2010)) (alterations in original). Thus, whether § 59:2-2 confers "immunity" depends on whether § 59:2-2 "exempts" public entities from liability altogether or "limits" potential liability.

In *E.C. by D.C.*, the Appellate Division considered § 59:2-1.3(a)(1)'s effect on two TCA provisions and concluded that one provision was an "immunity" which § 59:2-1.3(a)(1) abrogated, while the other was not. 268 A.3d at 1036–37. The first provision, N.J. Stat. Ann. § 59:2-10, states that a "public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." Focusing on the words "is not liable," the Appellate division found that § 59.2-10 is an immunity because it "does not express when a public entity will be liable for the wrongful conduct of its employee or to what extent; it states, without exception, that a public entity will not be held liable for, among other things, an employee's crimes." *Id.* at 1037. The second TCA provision at issue, N.J.S.A. § 59:9-2(d), states that "[no] damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury...." The Appellate Division concluded that this provision is "is not an immunity but only a limitation on liability" because it "does not purport to free a public entity from liability," but only "limits the damages that may be awarded once a public entity is held liable." *Id.*

22

Following *E.C. by D.C.*, § 59:2-2 is not an "immunity" created by the TCA.  Again, § 59:2-2 states that "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances."  N.J. Stat. Ann. § 59:2-2(a).  This provision is the "primary source of public entity liability," "establishes the principle of vicarious liability for all public entities," and "relies upon the established principles of law such as the doctrine of *respondeat superior*."  Wright v. State, 778 A.2d 443, 450–51 (N.J. 2001) (quoting cmt. to N.J. Stat. Ann. § 59:2-2).  On its face, this statute does not "exempt" public entities from liability, but rather explains "when" and to what extent "a public entity will be liable for the wrongful conduct of its employee," namely, when a public employee causes injury while "acting within the scope of his employment," and to the same extent as the employee.  *E.C. by D.C.*, 268 A.3d at 1036–37.  Thus, evaluating § 59:2-2 in light of *E.C. by D.C.*, § 59:2-2 is a limitation rather than an immunity.  *See also Rogers v. Jordan*, 773 A.2d 116, 119 (N.J. Super. Ct. App. Div. 2001) (discussing § 59:2-2 and stating that the TCA "does not afford a public entity any specialized immunity when determining whether it is vicariously liable for the acts of its employees").  Because § 59:2-2 is not an immunity, § 59:2-1.3(a) does not abrogate § 59:2-2.

The Senate Judiciary Committee's statement to the 2019 Amendment supports the conclusion that § 59:2-2 and the principles of agency law that it embraces are not immunities.  The Senate Judiciary Committee stated that the Legislature passed the 2019 Amendment to ensure that "a public entity, as defined in the [TCA], may be held liable [in sexual abuse suits] in the same manner as a private organization."  S. Judiciary Comm. Statement to S. No. 477 (March 7, 2019), *available at*

https://www.njleg.state.nj.us/bill-search/2018/S477/bill-text?f=S0500&n=477_S1.  As noted above, § 59:2-2 "adopts the general concept of vicarious liability expressed by cases decided prior to the adoption of the TCA."  *Hoag v. Brown*, 935 A.2d 1218, 1230 (N.J. Super. Ct. App. Div. 2007) (citing *McDonough v. Jorda*, 519 A.2d 874 (N.J. Super. Ct. App. Div.1986), *certif. denied*, 540 A.2d 1282 (1988), *cert. denied sub nom., Jorda v. City of New Brunswick*, 489 U.S. 1065 (1989)); *see also Cruz v. New Jersey Dep't of Corr.*, No. CV 15-8813 (JLL), 2016 WL 2653916, at *2 (D.N.J. May 9, 2016) (same).  The vicarious liability principles adopted in § 59:2-2, including the scope-of-employment limitation, apply to private organizations.  *See Carter v. Reynolds*, 815 A.2d 460, 463 (N.J. 2003).  Thus, leaving § 59:2-2's scope-of-employment limitation intact furthers the Legislature's goal of placing public and private employers on equal footing.

In sum, the Court finds that the text of § 59:2-1.3(a) and § 59:2-2, the Senate Judiciary Committee's commentary, and case law all suggest that § 59:2-2 is not an immunity.  Likewise, the Court does not discern any intent in § 59:2-1.3(a) or the Senate Judiciary Committee's commentary to dissolve the scope-of-employment limitation as codified in § 59:2-2 or as it exists at common law.  The Court therefore concludes that § 59:2-1.3(a) does not abrogate § 59:2-2.

### c.  Application

The Court now returns to Plaintiff's tort claims against Galloway.  "[T]he analytical approach [for courts deciding TCA cases] should be [to determine] whether an immunity applies and if not, should liability attach."  *McDonough v. Jorda*, 519 A.2d 874, 880 (N.J. Super. Ct. App. Div. 1986) (quoting cmt. to N.J. Stat. Ann. § 59:2-1).  Because Plaintiff seeks to hold Galloway vicariously liable for J.P.D.'s sexual abuse, § 59:2-1.3(a) defeats liability.  Thus, the question is whether liability attaches for any of

24

the tort claim alleged in the Amended Complaint.  Again, Count XII alleges that Galloway is vicariously liable for J.P.D.'s assault and battery (Count V), false imprisonment (Count VI), intentional infliction of emotional distress (Count VII) and J.P.D's civil conspiracy with K.M (Count XI).  Galloway argues that, even if J.P.D. committed these torts, the Amended Complaint does not allege facts suggesting that J.P.D. acted within the scope of his employment when he did so.  [Dkt. 44-1 at 25–26].

Under New Jersey law, "[c]onduct is generally considered to be within the scope of employment if, 'it is of the kind [that the servant] is employed to perform; it occurs substantially within the authorized time and space limits; [and] it is actuated, at least in part, by a purpose to serve the master.'"  *Di Cosala*, 450 A.2d at 513 (quoting Restatement (Second) of Agency § 228 and citing Restatement (Second) of Agency § 229) (alterations in original); *Rodriguez v. Zeigler*, No. A-0591-16T3, 2018 WL 3130959, at *2 (N.J. Super. Ct. App. Div. June 27, 2018); *accord Carter v. Reynolds*, 815 A.2d 460, 465–66 (N.J. 2003).  "Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master."  *Carter*, 815 A.2d at 465 (quoting Restatement (Second) of Agency § 228(b)).

The Court agrees with Galloway.  Plaintiff does not plead any facts plausibly suggesting that J.P.D.'s conduct here was "of the kind" of conduct that J.P.D. was "employed to perform."  *Di Cosala*, 450 A.2d at 513.  While the Amended Complaint alleges that J.P.D. came to know Plaintiff at Plaintiff's home and through J.P.D.'s on-duty work as a police officer, the Amended Complaint does not allege facts suggesting that the abuse or J.P.D.'s efforts to conceal the abuse occurred "substantially within" the "time and space limits" authorized by Galloway.  *Di Cosala*, 450 A.2d at 513.  Rather, the

Amended Complaint alleges that "most all of the sexual abuse occurred in Defendant J.P.D.'s bedroom." [Am. Compl. ¶ 57]. *See Doughty v. U.S. Postal Serv.*, 359 F. Supp. 2d 361, 366 (D.N.J. 2005) (finding that a postal employee's sexual assault of a co-worker was outside the scope of employment in part because the officer was "off-duty and off work premises" when the assault occurred); *Rogers v. Jordan*, 773 A.2d 116, 122 (N.J. Super. Ct. App. Div. 2001) (finding that a police officer involved in a car accident acted outside the scope of his employment because the officer "was on his way home during lunch break for a purely personal purpose and, therefore, his actions were neither the type he was employed to perform nor actuated by a purpose to serve his employer."). The Amended Complaint also fails to allege facts suggesting that J.P.D. sexually abused Plaintiff, falsely imprisoned Plaintiff, or conspired to conceal the abuse in order "to serve" Galloway. *See Rodriguez*, 2018 WL 3130959, at *2 (finding that a police officer did not act "to serve" his employer when he investigated a suspected invasion of his own home while off duty and discharged his police-issued firearm). As a result, Plaintiff's Amended Complaint fails to allege that J.P.D. acted within the scope of his employment when he took custody of and abused Plaintiff.

This conclusion, however, does not end the analysis. Plaintiff argues that Galloway can be held vicariously even if J.P.D.'s misconduct exceeded his scope of employment under Restatement (Second) of Agency § 219(2)(d), which states that

> [a] master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

[*See* Dkt. 50 at 27–29].  Plaintiff cites to the discussion of and reliance on § 219(2)(d) in *Hardwicke v. American Boychoir School*, which involved a boarding school's vicarious liability for sexual abuse perpetrated against a student by numerous school employees and students.  845 A.2d 619, 623–24, 640 (N.J. Super. Ct. App. Div. 2004), *aff'd as modified*, 902 A.2d 900 (N.J. 2006).  In that case, the Supreme Court of New Jersey found that fact issues precluded summary judgment on the vicarious liability claims against the school based on employee's assault and battery, false imprisonment, and emotional distress.  *See id.* at 639.  Plaintiff urges the Court to reach the same conclusion here.  [*See* Dkt. 50 at 27–29].

Galloway's reply brief does not fully grapple with this argument.  Galloway points out some of the many factual distinctions between this case and *Hardwicke*, but does not refer to, discuss, or argue against § 219(2)(d) as a viable theory of vicarious liability.  [Dkt. 53 at 17–8].  This omission is significant.  As Plaintiff points out, and the Court's research has confirmed, "there are no New Jersey cases deciding whether a municipal policeman is the sort of agent empowered by his master within the meaning of Restatement § 219(2)(d)."  [Dkt. 50 at 29].  As a result, there are significant legal questions to answer.  For example, it is unclear whether the TCA's scope-of-employment limitation at N.J. Stat. Ann. § 59:2-2, or any other provision of the TCA, permits vicarious liability for a public employer under § 219(2)(d).  Further, the Superior Court, Appellate Division recently cautioned that, without principled limitations, § 219(2)(d) could "swallow[] the general rule that respondeat superior does not attach to intentional torts" and render employers strictly liable for their employees' private misconduct that occurs outside of the employee's scope of employment.  *E.S. for G.S. v. Brunswick Investment Ltd. P'ship*,263 A.3d 527, 535, 539 (N.J. Super. Ct. App. Div. 2021) (citations

and quotations omitted).  The Court declines to fully consider § 219(2)(d)'s applicability

in in this case without the benefit of full briefing and where Galloway has not resisted its

applicability.  Thus, even though the Court agrees that Plaintiff has not alleged conduct

within the scope of J.P.D.'s employment, the Court declines to dismiss Plaintiff's

vicarious liability claims.

## 2.  Direct Liability

The Amended Complaint alleges that Galloway is directly liable for negligent

supervision (Count VIII), negligence (Count XI), and gross negligence (Count X).

Galloway only argues for dismissal of the negligent supervision claim.  [*See* Dkt. 44-1 at

30–32].  The Court will limit its analysis accordingly.

As noted above, N.J. Stat. Ann. § 59:2-1.3(a)(2) abrogates immunity for public

entities in suits alleging that the "negligent hiring, supervision or retention of any public

employee" caused "sexual assault," a "crime of a sexual nature," a "prohibited sexual

act," or "sexual abuse" against a "minor under the age of 18."  Plaintiff's negligent

supervision claim appears to allege that Galloway was negligent in supervising J.P.D. as

he took custody of and abused Plaintiff.  [*See* Am. Compl. ¶¶ 102–03].  To state a claim

for negligent supervision, a plaintiff must show that "the employer knew or had reason

to know that the employee exhibited dangerous characteristics, that there was a

reasonable foreseeability of harm to others, and that the negligent supervision was the

proximate cause of the injuries."  *Jones v. Pi Kappa Alpha Int'l Fraternity*, *Inc.*, 431 F.

Supp. 3d 518, 527 (D.N.J. 2019) (quoting *Forrest v. Parry*, 930 F.3d 93, 112 (3d Cir.

2019)).

Galloway argues that Plaintiff's negligent supervision claim fails because the

Amended Complaint does not allege that Galloway knew or had reason to know that

J.P.D. would sexually abuse a child in his custody.  [Dkt. 44-1 at 30–31].  Plaintiff does not oppose this argument, and therefore waives his negligent supervision claim.  *See Hollister v. U.S. Postal Serv.*, 142 F. App'x 576, 577 (3d Cir. 2005) ("[I]f a party represented by counsel fails to oppose a motion to dismiss, the district court may treat the motion as unopposed and subject to dismissal without a merits analysis." (citing *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1992))).  Moreover, the Court agrees that the Amended Complaint does not plausibly allege that Galloway knew or had reason to know of J.P.D.'s sexual abuse.  The Court will therefore grant Galloway's motion to dismiss Count VIII.

## IV.   CONCLUSION

For the reasons set forth above, the Court will grant Galloway's motion to dismiss Counts II, IV, and VIII without prejudice and deny Galloway's motion to dismiss Plaintiff's vicarious liability claims at Count XII.  An appropriate order will follow.


Dated: September 29, 2022

/s/ *Joseph H. Rodriguez*
Hon. Joseph H. Rodriguez,
UNITED STATES DISTRICT JUDGE