UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| K.J., | : | Hon. Joseph H. Rodriguez |
| *Plaintiff,* | : | |
| | : | 1:20-cv-14177 |
| v. | : | |
| J.P.D., K.M., GALLOWAY TOWNSHIP POLICE, TOWNSHIP OF GALLOWAY, JOHN DOES 1-10, ABC CORPORATIONS, | : | **OPINION** |
| *Defendants.* | : | |

This matter is before the Court on defendant K.M.'s motion to dismiss plaintiff K.J.'s First Amended Complaint in lieu of answer pursuant to Fed. R. Civ. P. 12(b)(6) [Dkt. 57]. The Court is in receipt of the opposition filed by K.J. [Dkt. 60] as well as the reply brief of K.M. [Dkt. 61]. The Court exercises its discretion to decide the motion without oral argument. *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1. For the reasons set forth herein, the motion will be granted.

**I.    Background**

This action arises out of the alleged sexual abuse of K.J. by defendant J.P.D. ("J.P.D."). J.P.D. is a former officer with the Galloway Township Police Department ("GTPD"). Am. Compl. ¶ 3 [Dkt. 42]. When Plaintiff was approximately eleven years old and while his parents were going through a divorce, Plaintiff came to know Defendant J.P.D., who J.P.D. responded to multiple domestic violence calls at Plaintiff's home. Am. Compl. ¶¶ 13–15. After being called to the home on several occasions, J.P.D. gave Plaintiff his pager number so that Plaintiff could notify J.P.D. before Plaintiff's father visited the home. Am. Compl. ¶ 16. J.P.D. developed a rapport with Plaintiff and his family over several months, brought snack to Plaintiff's house brought Plaintiff and his brother to a professional basketball game. Am. Compl. ¶¶ 23–25.

1

When Plaintiff's parents finalized their divorce, Plaintiff's mother lost the family home and moved in with a relative. Am. Compl. ¶ 27. J.P.D. "offered to allow Plaintiff and his younger brother to live with him." Am. Compl. ¶ 28. Plaintiff alleges that J.P.D. "utilized his status as a Galloway Police Officer to convince Plaintiff's mother to allow Plaintiff and his brother to stay with Defendant J.P.D." Am. Compl. ¶ 30. As a result, Plaintiff and his brother moved to J.P.D.'s home in November or December of 1995. Am. Compl. ¶ 31.

After Plaintiff and his brother moved in with J.P.D., J.P.D. began sexually abusing Plaintiff. Am. Compl. ¶ 42. The abuse began when J.P.D. groped Plaintiff while Plaintiff and his brother were play wrestling with J.P.D. Am. Compl. ¶¶ 43–44. Later that night, J.P.D. asked Plaintiff to go to J.P.D.'s bedroom, where J.P.D. took out his police-issued handgun, "gave Plaintiff a lengthy instruction on how the gun operates," placed the gun on his nightstand, and instructed Plaintiff to go onto J.P.D.'s bed. Am. Compl. ¶¶ 45–47. J.P.D. then removed Plaintiff's pants and "forcibly masturbated Plaintiff." Am. Compl. ¶ 50. Plaintiff feared that J.P.D. "would overtly threaten him" with the gun if Plaintiff refused. Am. Compl. ¶ 50. J.P.D. told Plaintiff that this would be "their secret" and that nobody needed to know. Am. Compl. ¶ 51. When Plaintiff told J.P.D. that he intended to tell his mother, J.P.D. said that he had already told her and said "I have a gun and a badge. Who are you going to call on me?" Am. Compl. ¶ 53. Out of fear, Plaintiff did not tell. From there, J.P.D. continued to sexually abuse Plaintiff by performing oral sex on Plaintiff, forcing Plaintiff to perform oral sex on J.P.D., and sodomizing Plaintiff. Am. Compl. ¶¶ 59, 62–64. "[M]ost all of the sexual abuse occurred in Defendant J.P.D.'s bedroom," Am. Compl. ¶ 57, and J.P.D. "always kept his police issued handgun on top of or inside of the bedside nightstand." Am. Compl. ¶ 58. J.P.D. sometimes began the abuse by instructing Plaintiff to load bullets into the magazine of J.P.D.'s gun and, on one occasion, J.P.D. loaded a round into the

2

chamber. Am. Compl. ¶ 59. The abuse continued until the summer of 1996. Am. Compl. ¶ 65. Plaintiff avoided further abuse until 1999, when he was sent on one occasion to J.P.D.'s house, where J.P.D. abused Plaintiff. Am. Compl. ¶ 67. Plaintiff has suffered severe emotional distress because of this abuse. Am. Compl. ¶ 68.

The Amended Complaint names K.M. as a defendant in this action. K.M. was an officer employed by the Galloway Township Police Department. K.M. was J.D.P.'s police partner from 1994 to 1998 and the two were personal friends. Am. Compl. ¶ 4. Plaintiff alleges liability against K.M. for sex/gender discrimination (Count Four), negligence (Count Nine), and gross negligence (Count Ten) based on K.M.'s alleged knowledge that Plaintiff was living with J.P.D. and his failure to report the alleged unlawful custody arrangement to the Division of Child Protection and Permanency despite having a duty to do so. Plaintiff additionally asserts liability for civil conspiracy (Count Eleven) premised on the alternative theory that K.M. unlawfully conspired with J.P.D. to conceal the fact that Plaintiff was in the custody if J.P.D. In furtherance of claims, Plaintiff alleges that he recalls J.P.D. speaking on the telephone to K.M. regarding the living arrangement as well as about outings and activities J.P.D. would attend with Plaintiff and his brother. Am. Compl. ¶¶ 35-36. By the present motion, K.M. seeks dismissal of each of these counts for failure to state a claim under Fed. R. Civ. P. 12 (b)(6).

## II.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. *Id.* In general, only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration when deciding a motion to dismiss under Rule 12(b)(6).

*See Chester Cnty Intermediate Unit v. Pa. Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d. Cir. 2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 570. "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." *Wyeth v. Ranbaxy Labs., Ltd.*, 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." (quoting *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005))). *Accord Iqbal*, 556 U.S. at 678–80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). *See also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. Discussion

### a. Sex/Gender Discrimination In Provision of Public Accommodation under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12 (Count Four)

Plaintiff alleges that K.M. is liable under the NJLAD for engaging in "sex/gender discrimination in [the] provision of a public accommodation." The NJLAD provides, in part:

> [i]t shall be . . . unlawful discrimination . . . [f]or any . . . agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof . . . on account of the . . . sex . . . of such person . . .

N.J.S.A 10:5-12(f)(1). "To state a claim under the public accommodation theory of the NJLAD, a plaintiff must allege, '(1) defendant operates a place of public accommodation, (2) the plaintiff is a member of a protected class, and (3) he or she was denied equal treatment on the basis of his or her membership in a protected class.'" *Greene v. Lance*, No. CV2114399, 2022 WL 1241309, at *4 (D.N.J. Apr. 27, 2022) (quoting *Vergara v. Keyes*, No. 20-1460, 2020 WL 7778080, at *4

(D.N.J. Dec. 30, 2020)). The Superior Court of New Jersey, Appellate Division has held that a "police department—both the building and the individual officers—is a place of public accommodation." *Ptaszynski v. Uwaneme*, 853 A.2d 288, 297 (N.J. Super. Ct. App. Div. 2004); *see also Sandy v. Twp. of Orange*, No. A-0034-19, 2021 WL 3197029, at *11–12 (N.J. Super. Ct. App. Div. July 29, 2021). "[T]he discriminatory acts of law enforcement officers are considered public accommodation discrimination under the NJLAD." *Vandegrift v. Bowen*, No. CIV.A 07-2623, 2009 WL 1913412, at *3 (D.N.J. June 30, 2009) (citing *Ptaszynski*, 853 A.2d at 288).

The NJLAD provides for individual liability under the theory of aiding and abetting. *See Cicchetti v. Morris Cnty. Sheriff's Office*, 194 N.J. 563, 594 (2008) (individual liability under NJLAD can only arise through the "aiding and abetting[] mechanism"); *see also Varughese v. Robert Wood Johnson Med. Sch.*, No. CV1602828, 2017 WL 4270523, at *12 (D.N.J. Sept. 26, 2017). Under N.J.S.A. 10:5-12(e), it is unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so." N.J.S.A. 10:5-12(e).[1] "[F]or a defendant to be individually liable for aiding and abetting, the employer must also be liable under the LAD." *Ivan v. Cnty. of Middlesex*, 595 F. Supp. 2d 425, 463 (D.N.J. 2009).

Plaintiff articulates an aiding and abetting theory under Count Four, which alleges in relevant part that

> Defendant **K.M.** discriminated against Plaintiff on the basis of sex/gender by aiding and/or abetting Defendant J.P.D. in the aforementioned sexual abuse of Plaintiff. Specifically, Defendant **K.M.** knew that Plaintiff was living with Defendant J.P.D.

---

[1] In order for an employee to be liable for aiding and abetting, the plaintiff must allege that: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Tarr v. Ciasulli*, 181 N.J. 70, 84, 853 A.2d 921 (2004) (quoting *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999)) (internal quotations omitted).

> and did not report same to any authorities. . . As a sworn law enforcement officer, Defendant K.M. knew or should have known that it was inappropriate and contrary to law for Defendant J.P.D. to take and retain custody of Plaintiff without involvement of child protection officials or Court order. Defendant K.M. willfully failed to report Defendant J.P. D.'s conduct to the Galloway Defendants or other competent governmental authorities in an effort to cover for Defendant J.P.D., his police partner and personal friend.

Am. Compl. ¶¶ 95, 96.

Because the Court has dismissed Plaintiff's NJLAD claim against K.M.'s employer/principal at the relevant time – the Township of Galloway – that claim necessarily fails against K.M. *See Ivan*, 595 F. Supp. 2d at 463.

### b. Negligence (Count Nine) and Gross Negligence (Count Ten)

"To sufficiently state a claim for negligence (which differs from gross negligence only in the degree of negligent conduct) a plaintiff must allege the defendant breached a duty of care and that the breach was the actual and proximate cause of damages to the plaintiff." *Kinney Bldg. Assocs., L.L.C. v. 7-Eleven, Inc.*, No. 2:15-CV-7917, 2016 WL 2855063, at *4 (D.N.J. May 16, 2016) (citing *Parks v. Pep Boys*, 659 A.2d 471, 478 n.6 (N.J. Super. Ct. App. Div. 1995)).

Plaintiff proposes three potential bases for K.M.'s liability in negligence: (1) K.M.'s statutory duty to report that Plaintiff was an abandoned or neglected child because Plaintiff was living with J.P.D. without proper custody; (2) K.M. owed a common law duty to Plaintiff based on K.M.'s status as a police officer; and, (3) K.M. owed a common law duty to Plaintiff based on K.M.'s relationship with J.P.D. The central issue is therefore whether K.M. owed a duty to Plaintiff and, if so, the scope of that duty.

"A duty is an obligation imposed by law requiring one party 'to conform to a particular standard of conduct toward another.'" *Acuna v. Turkish*, 192 N.J. 399, 413 (2007) (quoting *Prosser & Keeton on Torts: Lawyer's Edition* § 53, at 356 (5th ed. 1984)). Whether, in a given context, "a

7

duty to exercise reasonable care to avoid the risk of harm to another exists is [a question] of fairness and policy that implicates many factors." *Carvalho v. Toll Bros. & Devs.*, 143 N.J. 565, 572 (1996).

Because "[p]ublic policy must be determined in the context of contemporary circumstances and considerations," duty of care "is a malleable concept that 'must of necessity adjust to the changing social relations and exigencies and man's relation to his fellows.'" *J.S. v. R.T.H.*, 155 N.J. 330, 339 (1998) (quoting *Wytupeck v. Camden*, 25 N.J. 450, 462 (1957)). "However, as a background principle, the law of torts declines to impose a duty of care upon '[a]n actor whose conduct has not created a risk of physical or emotional harm to another.'" *G.A.-H. v. K.G.G.*, 238 N.J. 401, 415 (2019) (second alteration in original) (quoting Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 37 (Am. Law Inst. 2012)). Thus, "when the duty at issue relates to the risk of harm created by a third party, the plaintiff must prove that the defendant knew or had reason to know of the risk of harm in question." *Id.* (citing *J.S.*, 155 N.J. at 338, 714 A.2d 924.). In *J.S.*, The Supreme Court of New Jersey explained the foreseeability inquiry and how it can be tailored to address instances in which the proposed duty of care pertains to third-party harm:

> Foreseeability as a component of a duty to exercise due care is based on the defendant's knowledge of the risk of injury and is susceptible to objective analysis. That knowledge may be an actual awareness of risk. Such knowledge may also be constructive; the defendant may be charged with knowledge if she is in a position to discover the risk of harm. In some cases where the nature of the risk or the extent of harm is difficult to ascertain, foreseeability may require that the defendant have a special reason to know that a particular plaintiff or identifiable class of plaintiffs" would likely suffer a particular type of injury. Further, when the risk of harm is that posed by third persons, a plaintiff may be required to prove that defendant was in a position to know or have reason to know, from past experience, that there [was] a likelihood of conduct on the part of [a] third person[ ] that was likely to endanger the safety of another.

*J.S.*, 155 N.J. at 338 (internal citations and quotations omitted).

### i. Statutory Negligence

In support of his claim advanced under the theory of statutory negligence, Plaintiff refers to N.J.S.A. 9:6-8.10, which provides that

> Any person having reasonable cause to believe that a child has been subjected to child abuse, including sexual abuse, or acts of child abuse shall report the same immediately to the Division of Child Protection and Permanency by telephone or otherwise.

N.J.S.A. 9:6-8.10. Plaintiff avers that K.M. was duty-bound to report because K.M. had reasonable cause to "be suspicious" based in his alleged knowledge "that his unmarried, childless, white friend and police partner suddenly had two small African-American boys living with him." Opp. at p. 7 of 9. Plaintiff further asserts that K.M. was under a duty to report based on the meaning of "abused child" supplied by N.J.S.A. 9:6-8.9 (e), which extends the definition of the term to include children who are "willfully abandoned by his parent or guardian, or such other person having his custody and control[.]" *Id.* at p. 6-7 of 9; citing N.J.S.A. 9:6-8.9 (e). According to Plaintiff, K.M.'s failure to report despite having reasonable cause to believe Plaintiff was abandoned gives rise to liability for negligence. Fundamental to Plaintiff's claim in this regard is his allegation that he recalls J.P.D. discussing with K.M. that Plaintiff and his brother were living with J.P.D. Am. Compl. ¶ 36. Plaintiff further alleges that, "based on information and belief, Defendant K.M. was further aware that Plaintiff was living with Defendant J.P.D. without a formal foster placement or other official action by the Division of Child Placement and Permanency." Am. Compl. ¶ 34.

"Such a statutory violation might support a claim in any one of three ways: the statute may create civil liability by its provisions, a violation may constitute negligence *per se*, or a violation may constitute evidence of negligence." *Gonzalez v. New Jersey Dep't of Child & Fams.*, 545 F. Supp. 3d 178, 232 (D.N.J. 2021). N.J.S.A. 9:6-8.10 is a penal statute and does not expressly create civil liability. *Id.* Nor does it create liability for negligence *per se*, because this statute does not "specifically incorporate the non-statutory or common-law standard" of

negligence. *Id.* (citing *J.S.* 155 N.J. 330, 348) (violation of N.J.S.A. 9:6-8.10 is not negligence per se because it "does not purport to incorporate or codify any common-law standard" or "expressly attempt to resolve for purposes of civil liability the comparative interests of the parties"); *see also Zelnick v. Morristown-Beard Sch.*, 445 N.J. Super. 250, 263, 137 A.3d 560, 568 (Law. Div. 2015) ("Child abuse reporting statutes do not typically create a duty of care or a basis for civil liability."). Nevertheless, under certain circumstances evidence of a violation of N.J.S.A. 9:6-8.10 may serve as evidence of negligence because the "protections provided, the evils addressed, and the obligations imposed by the reporting statute parallel those that would be relevant in recognizing the existence of a duty as a basis for a civil remedy." *J.S., 155 N.J. at 349* (holding a violation of N.J.S.A. 9:6-8.10 constitutes evidence of negligence). New Jersey courts have thus held that N.J.S.A. 9:6-8.10 furnishes a standard of care for negligence claims based on a failure to report child abuse. *See L.A. v. DYFS*, 217 N.J. 311, 331–32, 89 A.3d 553 (N.J. 2014) (N.J.S.A. 9:6-8.10 provides standard of care for negligence claim based on failure to report); *J.D. v. Maggaulli*, 2015 WL 4164809 at *5 (App. Div. July 13, 2015) (N.J.S.A. 9:6-8.10 provides standard of care); *Cf. Baksh v. Patel*, 2014 WL 1698345 at *2, (N.J. Super. Ct. App. Div. May 1, 2014) (proving violation of statute carries burden of production for standard of care). In this case, however, Plaintiff has not alleged sufficient facts to plausibly show that K.M. owed a duty to report based upon N.J.S.A. 9:6-8.10 under either of the theories advanced.

Plaintiff has not alleged sufficient facts to state a cognizable cause of action under the theory that K.M. was duty-bound to report because K.M. had reasonable cause to be suspicious. To properly plead the existence of a duty in this context, Plaintiff must set forth facts to plausibly show that "a person similarly situated would have held a reasonable belief that child abuse had occurred." *L.A.*, 217 N.J. at 317. Here, the Amended Complaint contains far too few and

10

conclusory allegations – some of which are based on a nearly 30-year retrospective purported recollection – to plausibly show that a person in K.M.'s position at the time would have reasonable cause to believe J.P.D. was engaged in an illegal sexual relationship with a minor. *See* Am. Compl. ¶¶ 33-39. Because the assertion of such facts is prerequisite to pleading the existence of any affirmative duty to report, Plaintiff's claim for negligence must fail as a matter of law under this theory.

Plaintiff's theory that K.M. was under a duty to report based on his alleged knowledge that K.J. was abandoned (and therefore "abused") by his mother is likewise unavailing. "[T]he child abuse that gives rise to this reporting obligation [under N.J.S.A. 9:6-8.10] concerns abuse arising from the acts or omissions of only a child's 'parent, guardian, or other person having [the child's] custody and control.'" *G.A.-H. v. K.G.G.*, 455 N.J. Super. 294, 300–01 (App. Div. 2018), rev'd, 238 N.J. 401, 210 A.3d 907 (2019). "[W]hen the duty at issue relates to the risk of harm created by a third party, the plaintiff must prove that the defendant knew or had reason to know of the risk of harm in question." *G.A.-H. v. K.G.G.*, 238 N.J. at 415 (citing *J.S.*, 155 N.J. at 338). This standard for assessing the existence of a legal duty requires the Court to take into account whether or not it was foreseeable that the risk of harm in question here – the alleged sexual abuse of Plaintiff by J.D.P. – would attend. By way of example illustrating this principle, in *J.S.* the Supreme Court of New Jersey held that a spouse with "knowledge or special reason to know" that her cohabitating spouse was sexually abusing children had a duty of care to report that abuse. *J.S.*, 155 N.J. at 334, 352. Although that holding acknowledges the spousal relationship present, it rests on the awareness gained through that relationship. Among the factors the court found relevant in determining whether the husband's assaults were sufficiently foreseeable to support the imposition of a duty on his wife included prior offenses; the number, recency, and

11

nature of those offenses; the extent to which the non-assaulting spouse encouraged or facilitated unsupervised deeds with the potential victims, and physical evidence and behaviors in the home. *Id.* at 340-41. Comparatively, in *G.A.-H.* the Supreme Court of New Jersey declined to impose that same duty upon a co-worker of an abuser where there was no reasonable basis to conclude that the co-worker knew that the abuser was engaged in an illegal sexual relationship with a minor. *G.A.-H.*, 238 N.J. at 417. Here, it has not been alleged that K.M. lived with Plaintiff, took Plaintiff to live with him, removed Plaintiff from his mother's home, visited Plaintiff at J.P.D.'s home, knew of the abusive conduct, knew of any history or proclivity for abuse on the part of J.P.D. or the likelihood of such conduct, or any scenario of the like. Nevertheless, Plaintiff argues that a duty should be imposed based on Plaintiff's recollection of a telephone conversation in which he supposedly heard J.P.D. discussing with K.M. that Plaintiff and his brother were living with J.P.D. These facts are insufficient, however, to establish that K.M. owed a duty of care to Plaintiff because they cannot support that K.M. had knowledge or reasonable cause to believe that J.P.D. was sexually abusing Plaintiff. Nor do Plaintiff's allegations that K.M. was a personal friend of J.P.D. and a police officer establish a "special reason to know" that Plaintiff was engaged in a sexual relationship with Plaintiff.

### ii. Common law duty to Plaintiff based on K.M.'s status as a police officer

Plaintiff next argues that K.M. owed Plaintiff a common law duty because K.M. was a police officer, sworn to protect the public and uphold the law. According to Plaintiff, the New Jersey's "*parens patriae* doctrine provides a basis for the duty Plaintiff seeks to impose." Opp. at p. 7-8 of 9. "Parens patriae refers to 'the state in its capacity as provider of protection to those unable to care for themselves.'" *Hojnowski v. Vans Skate Park*, 187 N.J. 323, 333 (2006) (quoting Black's Law Dictionary 1144 (8th ed. 2004)). The power arises from the "inherent

equitable authority of the sovereign to protect those persons . . . who cannot protect themselves . . ." *In re D.C.*, 146 N.J. 31, 47-48, 679 A.2d 634 (1996). The *parens patriae* doctrine therefore allows a state to bring suit to protect its interests in matters of public concern, for example, to protect minors. The Court recognizes, however, that Plaintiff's contention is that K.M.'s negligence is explained by conduct evidencing a disregard of the obligation created by the *parens patriae* doctrine. Yet Plaintiff has not presented, and the Court has not identified, any case decision in which it was recognized that *parens patriae* confers private cause of action for negligence against an individual. At bottom, because the Amended Complaint asserts liability against K.M. not in his official capacity as a police officer acting under the color of state law but as an individual, and in the absence of any facts to plausibly show that K.M. had knowledge of the risk of harm, Plaintiff's allegation of K.M.'s status as a police officer is insufficient to plead the existence of common law duty.

### iii. Common law duty to Plaintiff based on K.M.'s relationship to J.P.D.

Plaintiff additionally contends that K.M. owed a duty based on his "close personal and professional friendship with Defendant J.P.D. that gave him the opportunity to learn details about Defendant J.P.D.'s personal life." In support of this argument, Plaintiff cites the decision in *J.S.* in which the Supreme Court of New Jersey held that a spouse with "knowledge or special reason to know" that her cohabitating spouse was sexually abusing children had a duty of care to report that abuse. *See J.S.*, 155 N.J. at 334, 352. As discussed, *infra*, among the factors the court found relevant in determining whether the husband's assaults were sufficiently foreseeable to support the imposition of a duty on his wife included prior offenses; the number, recency, and nature of those offenses; the extent to which the non-assaulting spouse encouraged or facilitated unsupervised deeds with the potential victims, and physical evidence and behaviors in the home.

*Id.* at 340-41. Here, whether or not that same duty would extend to an individual having a "close personal and professional friendship" with the abuser, the Amended Complaint fails to plead a cognizable cause of action for negligence under this theory where the facts asserted therein are insufficient to plausibly show that K.M. had any actual or constructive knowledge or that J.P.D. was sexually abusing Plaintiff.

### c. Civil Conspiracy (Count Eleven)

In New Jersey, civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or an injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (2005) (internal citation and quotations omitted). "To establish a conspiracy, the plaintiff must demonstrate that there was one plan and that its essential scope and nature was known to each person who is charged with responsibility for its consequences." *Weil v. Express Container Corp.*, 360 N.J. Super. 599, 614 (App. Div. 2003) (internal citation and quotations omitted). "'It is enough [for liability] if you understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do your part to further them.'" *Banco Popular N. Am.*, 184 N.J. at 177 (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988). "Most importantly, 'the gist of the claim is not the unlawful agreement, but the underlying wrong which, absent the conspiracy, would give a right of action.'" *Id.* at 177-178 (quoting *Morgan v. Union County Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 364 (App. Div. 1993).

Plaintiff alleges that K.M.'s failure to report that Plaintiff was living with J.P.D. was the product of an agreement between the two defendants. According to Plaintiff, this agreement

constituted an unlawful conspiracy because "it was entered into to frustrate New Jersey statutes governing the property custody and disposition of abused, neglected and abandoned children[,]" namely, N.J.S.A. 9:6-8.27 and N.J.S.A. 0:6-8.29. Am. Compl. ¶ 39. Plaintiff contends that his pleadings are sufficient to withstand dismissal at this stage based on his allegations that telephone communications between K.M. and J.D.P establish that K.M. was on notice of the living circumstances, and the absence of any investigation shows that K.M. did not report on it despite being duty-bound to do so.

Fundamentally, however, Plaintiff only points to the fact of K.M.'s telephone communications with J.D.P. to show the existence of an agreement. The Third Circuit has held that "a conspiracy claim 'must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal.'" *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (quoting *Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam). The Court finds Plaintiff's allegations in this regard are vague, conclusory, and fall short of the minimum threshold necessary to properly plead a prima facie cause of action for conspiracy. While Plaintiff is entitled to have reasonable inferences drawn in his favor, he is not entitled to the benefit of speculation untethered to supportive facts. *See lDiaz v. Johnson Matthey*, 869 F.Supp. 1155, 1168 (D.N.J. 1994). ("While circumstantial evidence may be sufficient to prove an agreement, pure speculation is not.").

### III. Conclusion

For the reasons set forth herein, K.M.'s motion to dismiss Plaintiff's First Amended Complaint in lieu of answer pursuant to Fed. R. Civ. P. 12(b)(6) [Dkt. 57] will be granted. An accompanying order will follow.

March 7, 2023                              /s/ Joseph H. Rodriguez
                                           Hon. Joseph H. Rodriguez, USDJ